**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Michael Carpino, | ) CIV 14-1931-PHX-DGC (MHB) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Charles L. Ryan, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Petitioner Tony Michael Carpino, who is confined in the Arizona State Prison Complex, Lewis Complex, Buckeye, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer on December 11, 2014 (Doc. 10). Despite having an opportunity to do so, Petitioner has not filed a Reply.

## BACKGROUND

On January 25, 2011, Petitioner was indicted in the Superior Court of the State of Arizona on four felony counts: Attempt to Commit burglary in the Second Degree (counts one and two); Burglary in the Second Degree (count three); and Misconduct Involving Weapons (count four). (Doc. 10-1, at 3-5.) The trial court appointed counsel to represent Petitioner. (Id., at 8.) On June 14, 2011, Petitioner entered into a plea agreement with the State in which Petitioner agreed to plead guilty to amended count three, Burglary in the Second Degree with one prior felony conviction, and count four, Misconduct Involving

1  Weapons.  (Id., at 12.)

2      The plea agreement provided, as is applicable here, that on count three, Petitioner

3  faced a presumptive prison sentence of 6.5 years, a maximum sentence of 13 years, and an

4  aggravated sentence of 16.25 years. (Doc. 10-1, at 12.) The parties stipulated that Petitioner

5  would be sentenced to prison on count three for "no less than 6.5 years," and that Petitioner

6  be placed on supervised probation on count four upon his release from prison.  (Id., at 13.)

7  The State agreed to dismiss counts one and two, dismiss an allegation of remaining prior

8  felony convictions, and an allegation of sentencing enhancement pursuant to A.R.S. §13-

9  702.02.  (Id.)  Sentencing was scheduled for July 13, 2011.  (Id., at 17.)

10      The presentence report provided the following factual background:

11          The Glendale Repeat Offender squad was given information from a
   confidential source that the defendant, Tony Carpino, may be a person of
12   interest regarding residential burglaries. On January 7, 2011, January 10, 2011
   and January 14, 2011, Glendale police conducted mobile surveillance on the
13   defendant.

14          On January 7, 2011, at approximately 10:30 a.m., Glendale police noted
   that the defendant was the sole occupant of his vehicle and they observed him
15   driving around neighborhoods, which they stated is a common proactice for
   someone who is "casing" a residence for a potential burglary.  At one
16   residence, the defendant rang the front door bell and then entered the backyard
   through a gate.  While in the backyard, he unsuccessfully attempted to gain
17   access to the residence through the backdoor and backyard windows
   (dismissed count 2).  At another residence, the defendant knocked on the front
18   door and rang the doorbell.  He was observed driving away and then returning
   within a few minutes.  The homeowner, Glendale police officer, Detective
19   [D.], was home when the defendant returned.  Detective [D.] indicated that he
   believed the defendant was attempting to gain access to the residence and
20   thought he heard the defendant turn the door handle (dismissed count 1).

21          On January 14, 2011, at approximately 10:40 a.m., the defendant and
   co-defendant, James Lewis, entered the residence of [C.B. and R.W.], without
22   their permission and stole property (count 3).  While conducting surveillance,
   police observed the defendant enter Ms. [B.'s] backyard and then gain entry
23   to her home possibly via a dog door.  A short time later, officers saw the
   defendant and codefendant carrying items form the home and placing it in the
24   defendant's vehicle. When the defendant and codefendant left the area, mobile
   surveillance continued to follow them while other officers remained at the
25   victims' homes. The defendant and codefendant were taken into custody in the
   defendant's apartment complex parking lot without incident.  A search of the
26   vehicle revealed jewelry belonging to Ms. [B.], a Wii video game system with
   accessories, an I-POD, and two digital cameras.  One rifle and three shotguns
27   were also found in the defendant's vehicle belonging to Mr. [W.] (count 4).
   (Doc. 10-1, at 20.)

28

1    On July 13, 2011, Petitioner was sentenced to prison for a slightly aggravated term
2    of eight years on count 3, which the court ordered to be served concurrently with Petitioner's
3    Yavapai County case CR 2010-01097, and to a probation term of three years on count 4, to
4    begin upon Petitioner's discharge from prison.  (Doc. 10-1, at  40-43.)  In imposing "a
5    slightly aggravated sentence," the trial court considered "the mitigation urged by the
6    Defense," as well as "the number of Defendant's prior convictions [nine total], the fact that
7    there were multiple victims in the offenses," and the fact that "the offense was committed for
8    pecuniary gain."  (Doc. 10-3, at 54, 59.)

9    On August 29, 2011, Petitioner timely commenced his first "of-right" post-conviction
10   proceeding (hereinafter "PCR").  (Doc. 10-1, at 45-48.)  Counsel was appointed to represent
11   Petitioner, and that counsel ultimately filed a notice with the court stating that she was unable
12   to find any claims to raise in a PCR, and requested that Petitioner be granted additional time
13   to raise any issues *in propria persona*.  (Id., at 50-55)  Later, defense counsel, having
14   discovered "a potential issue to raise in post-conviction relief," filed a motion to set aside her
15   previous notice, and to be reinstated as counsel of record.  (Id., at 60-61)  The court granted
16   her request, and also granted her additional time to file a PCR petition.  (Id., at 63-64.)

17   On April 11, 2012, Petitioner's counsel filed a PCR petition raising two claims:  (1)
18   the Global Positioning System (GPS) tracking device used in the police investigation violated
19   Petitioner's Fourth Amendment rights, as set forth in a recent United States Supreme Court's
20   decision, United States v. Jones, __ U.S. __, 132 S.Ct. 945 (2012), and had Petitioner known
21   of the violation, he would not have accepted the plea agreement; and (2) Petitioner's prior
22   counsel was ineffective by failing to investigate this violation, failing to advise Petitioner
23   about the violation, failing to file a motion to suppress, and failing to motion the court to
24   withdraw Petitioner's guilty plea based upon the suppression issue.  (Doc. 10-1, at 66-81.)
25   \\\
26   \\\
27   \\\
28   \\\

The trial court summarily denied relief on August 14, 2012, reasoning as follows:

> Rule 32(a)(3) Arizona Rules of Criminal Procedure precludes relief on claims that have been previously waived. Because Defendant entered a guilty plea in this case, he has waived all non-jurisdictional defenses and defects occurring prior to the plea. *State v. Moreno*, 134 Ariz. 199, 200, 65 P.2d 23, 24 (App. 1982). The waiver of non-jurisdictional defects includes deprivation of constitutional rights. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

> To establish a colorable claim for ineffective assistance of counsel, Defendant must show that his counsel's performance fell below an objective standard of reasonableness as defined by prevailing professional norms and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

> To establish prejudice in the acceptance of a plea offer, Defendant must show a reasonable probability that had his attorney not given deficient advice, he would have rejected the plea offer and insisted on going forward to trial.

> Defendant entered into his plea agreement in June 2011 over six months before the United States Supreme Court issued its decision in *United States v. Jones*, __ U.S. __, 132 S.Ct. 945 (2012). The great weight of authority before *Jones* held that the use of GPS devices did not violate the Fourth Amendment.

> Defendant has not established that his counsel's performance was deficient because she failed to anticipate the future ruling of the United States Supreme Court.

> Defense counsel's failure to seek a motion to suppress is a matter of trial strategy that had a reasoned basis given the existing state of case law.

> Defendant has failed to show that but for his counsel's deficient advice, he would have rejected the offer and gone to trial.

> Defendant has failed to satisfy either prong of the *Strickland* test.

(Doc. 10-2, at 18-19.)

Petitioner filed a petition for review before the Arizona Court of Appeals on September 12, 2012. (Doc. 10-2, at 21-34.) In it, he asserted that the use of the warrantless GPS tracking device was unconstitutional and that he would not have entered into his plea agreement had he known he could challenge its use, and that his counsel was ineffective for failing to investigate and pursue a suppression motion based upon the constitutional violation. (Id., at 24-33.) In a memorandum decision, the Arizona Court of Appeals denied relief. (Doc. 10-2, at 49-51.) The Court explained its decision as follows:

> [Petitioner] reurges his claims without addressing the bases for the trial court's ruling. He ignores the court's determination that he waived his Fourth Amendment claim by pleading guilty and, beyond insisting that the Court in *Jones* "did not rewrite the Fourth Amendment," fails to address the court's

1    determination that counsel had no reason to advise [Petitioner] that he had a
2    viable Fourth Amendment claim. Notably, he identifies no authority existing
     before *Jones* suggesting that the warrantless placement of a GPS tracking
3    device on a vehicle violates the Fourth Amendment. He certainly has not
     identified any authority suggesting trial counsel fell below prevailing
4    professional norms by failing to raise such a claim. *See State v. Bennett*, 213
     Ariz. 562 ¶21, 146 P.3d 63, 68 (2006) (colorable claim of ineffective
5    assistance of counsel requires showing "both that counsel's performance fell
     below objectively reasonable standards and that this deficiency prejudiced the
     defendant"), *citing Strickland v. Washington*, 466 U.S. 668, 687 (1984).
6    (Id., at 51.)

7    Petitioner filed a petition for review in the Arizona Supreme Court, advancing the

8    same grounds for relief as he had in the lower courts. (Doc. 10-2, at 53-62.) On May 8,

9    2014, the Arizona Supreme Court summarily denied review. (Doc. 10-3, at 2.) On

10   September 3, 2014, Petitioner filed the instant, timely habeas petition, asserting two claims:

11   (1) that the "method the police used [GPS warrantless tracking] in obtaining the information

12   supporting the factual basis of the plea was unconstitutional, a violation of the Fourth

13   Amendment," and; (2) that his trial counsel "was ineffective for failing to investigate and

14   pursue, or for incorrectly advising Petitioner about a motion to suppress the information

15   obtained about his movements that the police obtained by using a GPS tracking device, a

16   violation of the Fifth, Sixth and Fourteenth Amendments." (Doc. 1, at 6-7.) Respondents

17   assert that Petitioner's claims should be denied on the merits as Petitioner waived any

18   constitutional violations by pleading guilty, and as Petitioner's counsel was not ineffective

19   by failing to predict a future Supreme Court decision. (Doc. 10, at 2.)

20                                          **DISCUSSION**

21   **A.  Merits Analysis**

22   **1.       AEDPA Standard of Review**

23   Under the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any

24   claim that was adjudicated on the merits in State court proceedings" unless the State court

25   decision was (1) contrary to, or an unreasonable application of, clearly established federal

26   law as determined by the United States Supreme Court; or (2) based on an unreasonable

27

28   ───────────────

[1] Antiterrorism and Effective Death Penalty Act of 1996.

1   determination of the facts in light of the evidence presented in the State court proceeding.

2   28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J.,

3   concurring and delivering the opinion of the Court as to the AEDPA standard of review).

4   "When applying these standards, the federal court should review the 'last reasoned decision'

5   by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

6        A state court's decision is "contrary to" clearly established precedent if (1) "the state

7   court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

8   or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

9   decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

10  precedent." Taylor, 529 U.S. at 405-06.   "A state court's decision can involve an

11  'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule

12  but then applies it to a new set of facts in a way that is objectively unreasonable, or (2)

13  extends or fails to extend a clearly established legal principle to a new context in a way that

14  is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002)

15  (citation omitted).

16       **2.    Ground One**

17       Aside from a challenge to the voluntary and intelligent character of the plea itself,

18  entry of a guilty plea on advice of counsel generally forecloses all collateral attacks with the

19  exception of jurisdictional claims.   Tollett v. Henderson, 411 U.S. 258, 266-67 (1973)

20  ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of

21  the offense with which he is charged, he may not thereafter raise independent claims relating

22  to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

23  He may only attack the voluntary and intelligent character of the guilty plea by showing that

24  the advice he received from counsel [was constitutionally deficient]."); see also Haring v.

25  Prosise, 462 U.S. 306, 319-20 (1983) (stating that a guilty plea forecloses consideration of

26  most pre-plea constitutional deprivations); United States v. Bohn, 956 F.2d 208, 209 (9th Cir.

27  1992) (per curiam) (guilty plea waives all nonjurisdictional defect claims); Moran v.

28  Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads

1    guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of

2    pre-plea constitutional violations") (*overruled on other grounds* in <u>Lockyer v. Andrade</u>, 538

3    U.S. 63 (2003)).

4          Pre-plea error is "jurisdictional," when it implicates the government's power to

5    constitutionally prosecute the defendant.  <u>United States v. Johnston</u>, 199 F.3d 1015, 1019 n.3

6    (9th Cir. 1999).  The Ninth Circuit has found jurisdictional errors when the statute is facially

7    unconstitutional, the indictment fails to state a valid claim, or the charge involves vindictive

8    prosecution.  <u>Id.</u>  <u>See</u> <u>also</u>, <u>Blackledge v. Perry</u>, 417 U.S. 21, 30-31 (1974) (in pleading

9    guilty, defendant did not waive claim of vindictive prosecution); <u>Menna v. New York</u>, 423

10   U.S. 61, 62 (1975) (*per curium*) (double jeopardy claim not waived "[w]here the State is

11   precluded by the United States Constitution from haling a defendant into court on a charge");

12   <u>United States v. Garcia-Valenzuela</u>, 232 F.3d 1003, 1006 (9th Cir. 2000) (issue of court's

13   encroachment upon the right of the executive branch to dismiss charges not waived).

14         The record establishes that Petitioner entered into a plea agreement with the State in

15   which he plead guilty to two charges in the indictment, and the State agreed to dismiss the

16   remaining two felony counts.  The plea agreement provided the sentencing ranges for each

17   count, and also that Petitioner agreed to "waive[] and give[] up any and all motions, defenses,

18   objections, or requests which he ha[d] made or raised, or could assert hereafter, to the court's

19   entry of judgment against him and imposition of a sentence upon him consistent with the

20   agreement," and that Petitioner "waive[d] and g[ave] up the right to appeal."  (Doc. 10-1,

21   at 13.)  During the change of plea colloquy with the court, Petitioner acknowledged that he

22   had read and understood the agreement, signed the agreement and initialed each paragraph.

23   (Doc. 10-3, at 33-34.)  Petitioner also acknowledged that he understood the charges and

24   sentencing ranges.  (<u>Id.</u>, at 35-38.)

25         The court further explained to Petitioner that he would be giving up several

26   constitutional rights, including his right to a jury trial and his right to have the State prove

27   his guilt beyond a reasonable doubt, his right to have a jury determine aggravating factors,

28   and his right to appeal.  (Doc. 10-3, at 40-42.)  Petitioner acknowledged that he understood

1   these rights and indicated his desire to plead guilty to the charges.  (Id., at 43.)  Petitioner

2   admitted the facts his counsel set forth on the record in support of his guilty pleas.  (Id., at

3   44-47.)  During Petitioner's sentencing hearing Petitioner took "full responsibility" and

4   apologized for his actions.  (Id., at 58-59.)  The record establishes that Petitioner's guilty

5   plea, and his waiver of rights associated with that guilty plea, were knowing and voluntary.

6        As Defendant entered a knowing and voluntary guilty plea in this case, he waived all

7   non-jurisdictional defenses and defects occurring prior to the plea, and that this waiver

8   included deprivation of Petitioner's constitutional right under the Fourth Amendment.  The

9   trial court's finding of waiver, citing Tollett, 411 U.S. at 267, was based upon a correct

10  review of the record and application of federal legal precedent.  The Arizona appellate court,

11  in affirming the trial court's ruling, concluded that, "hav[ing] reviewed the record, . . .the trial

12  court correctly rejected [Petitioner]'s claims in a thorough and well-reasoned minute entry."

13  (Doc. 10-2, at 51.)  The state court's decision was neither contrary to, or an unreasonable

14  application of clearly established federal law as determined by the United States Supreme

15  Court, and was based on a reasonable determination of the facts elicited in the state court

16  proceeding; thus, Petitioner's claim fails under the AEDPA and this Court will recommend

17  that it be denied.

18           **2.    Ground Two.**

19        The two-prong test for establishing ineffective assistance of counsel was set forth by

20  the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on an

21  ineffective assistance claim, a convicted defendant must show (1) that counsel's

22  representation fell below an objective standard of reasonableness, and (2) that there is a

23  reasonable probability that, but for counsel's unprofessional errors, the result of the

24  proceeding would have been different.  See id. at 687-88. There is a strong presumption that

25  a counsel's conduct falls within the wide range of reasonable assistance.  See id. at 689-90.

26  "[T]he defendant must overcome the presumption that, under the circumstances, the

27  challenged action 'might be considered sound trial strategy.'"  See id. (citation omitted). The

28  strategic choices a counsel makes after thoroughly investigating the law and the facts of the

1    case are unlikely to withstand a challenge.   Strickland, 466 U.S. at 690-91.

2            The Ninth Circuit has held that counsel must conduct a "reasonable investigation" in

3    order to make informed decisions about how to best represent the client, and must make

4    "reasonable decisions" about what particular investigation is unnecessary.   Hendricks v.

5    Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995) (citations omitted).   The Sixth Amendment

6    does not require, however, that counsel predict the future.   See Bullock v. Carver, 297 F.3d

7    1036, 1052 (10th Cir. 2002) (ineffective assistance claims may be rejected based upon former

8    counsel's failure to predict future changes in the law: "clairvoyance is not a required attribute

9    of effective representation"); accord, Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993).

10   In the court's evaluation of an attorney's performance, "every effort [must] be made to

11   eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

12   challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

13   Strickland, 466 U.S. at 689.

14           Petitioner pled guilty and was sentenced well before the Supreme Court issued its

15   decision in Jones.   The trial court found that Petitioner's counsel did not provide deficient

16   performance because the great weight of authority prior to Jones would not have supported

17   a suppression motion, and that counsel did not perform deficiently by failing to predict the

18   ruling.   The Arizona appellate court affirmed the trial court's decision, in particular noting

19   that Petitioner had failed to identify "any authority existing before Jones suggesting that the

20   warrantless placement of a GPS tracking device on a vehicle violates the Fourth

21   Amendment." (Doc. 10-2, at 51.)   Likewise, Petitioner does not identify any such authority

22   in his habeas petition.   The trial court also found that, even presuming deficient performance

23   by counsel, Petitioner did not establish Strickland prejudice, because he failed to demonstrate

24   that there was a reasonable probability, that despite the deficient advise, he would have

25   rejected the plea offer and insisted on going to trial.   Petitioner faced up to 70-years in prison

26   if convicted of all four charges in the indictment at trial.  (Doc. 10-3, at 10-11.)   There is no

27   evidence in the record that Petitioner would have rejected the plea agreement and gone to

28   trial if his trial counsel had filed a motion to suppress, and indeed, Petitioner does not allege

1   as much in his habeas petition.

2          The state court's determination that Petitioner's trial counsel did not provide deficient

3   performance by failing to file a motion to suppress is not an unreasonable application of

4   federal law.   Also, the state court's determination that Petitioner did not demonstrate

5   prejudice in any event, was not an unreasonable application of federal law, or an

6   unreasonable determination of the facts in light of the evidence presented in the state court

7   proceeding; thus, Petitioner's claim fails under the AEDPA and this Court will recommend

8   that it be denied.

9                                              **CONCLUSION**

10          Petitioner's habeas petition claims fail on their merits.   Wherefore, this Court will

11   recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed

12   with prejudice.

13          **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of

14   Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**

15   **PREJUDICE**.

16          **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

17   to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a

18   substantial showing of the denial of a constitutional right.

19          This recommendation is not an order that is immediately appealable to the Ninth

20   Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

21   Appellate Procedure, should not be filed until entry of the district court's judgment.   The

22   parties shall have fourteen days from the date of service of a copy of this recommendation

23   within which to file specific written objections with the Court.   See 28 U.S.C. § 636(b)(1);

24   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.   Thereafter, the parties have fourteen

25   days within which to file a response to the objections.   Failure timely to file objections to the

26   Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

27   and Recommendation by the district court without further review.   See United States v.

28   Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).   Failure timely to file objections to any

1   factual determinations of the Magistrate Judge will be considered a waiver of a party's right

2   to appellate review of the findings of fact in an order or judgment entered pursuant to the

3   Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

4          DATED this 10th day of April, 2015.

5

6

7                                 Michelle H. Burns
                                  United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28